IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

DARROW L. WILLIAMS,

    Petitioner,

vs.                     No. 04-2264-An

DAVID MILLS,

    Respondent.

---

ORDER OF DISMISSAL
ORDER DENYING CERTIFICATE OF APPEALABILITY
AND
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH

---

On April 14, 2004, Petitioner Darrow L. Williams, Tennessee Department of Corrections prisoner number 12907, an inmate at the West Tennessee State Penitentiary in Henning, Tennessee, filed a petition pursuant to 28 U.S.C. § 2254. (Docket Entries ("D.E.") 1.) United States District Judge J. Daniel Breen issued an order on December 1, 2004 that, <u>inter alia</u>, dismissed the petition, <u>sua</u> <u>sponte</u>, pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts ("Section 2254 Rules"), denied a certificate of appealability, and certified that an appeal would not be taken in good faith." (D.E. 9.) Judgment was entered on December 7, 2004. On December 20, 2004,

Plaintiff filed a motion for reconsideration (D.E. 11), which the Court denied on September 15, 2005 (D.E. 13).

Petitioner appealed, and the Sixth Circuit issued an order on February 5, 2007 remanding the case "for reconsideration with the full state court record" with the following explanation:

> The petitioner and the respondent now jointly move for remand to the district court. The parties agree that in making its ruling, the district court relied on the opinions of the state appellate court and did not review the entire state court record. The respondent concedes that a remand to the district court for reconsideration is required because the district court did not review the entire state court record prior to dismissing the petition. See Adams v. Holland, 330 F.3d 398, 406 (6th Cir. 2003), cert. denied, 541 U.S. 956 (2004); see also Nash v. Eberlin, 437 F.3d 519, 523-25 (6th Cir. 2006). In light of this concession by the respondent, a remand for reconsideration is appropriate.

Williams v. Mills, No. 05-6538 (6th Cir.).

On remand, the Court issued an order on February 13, 2007 that, inter alia, directed Respondent to file the state-court record and a response to the petition. (D.E. 19.) Respondent filed an answer to the petition on April 30, 2007 (D.E. 29) and filed what he characterized as "portions of the state court record" on May 2, 2007 (D.E. 30). On March 8, 2007, Petitioner filed a motion seeking appointment of counsel on the ground that "the full record of his trial proceedings has never been released" and, specifically, that "a serious portion of the original transcript was omitted." (D.E. 24.) The Court issued an order on July 12, 2007 that denied appointment of counsel but directed Respondent as follows:

Although Respondent has filed the state-court record (D.E. 30), he has not represented that the record before this Court is complete. In particular, Respondent has not responded to Petitioner's assertion that the record on direct appeal was incomplete. (D.E. 24 at 1.) Accordingly, Respondent is ORDERED, within twenty-three (23) days of the date of entry of this order, to advise the Court whether the entire state-court record has been submitted. If the record is incomplete, Respondent is directed either to submit the missing portions of the record or to advise the Court why it believes it is not required to do so, notwithstanding the order of the Sixth Circuit in this matter.

(D.E. 31. at 2-3.)

On August 3, 2007, Respondent filed his response concerning the status of the state-court record, in which he asserted that, under Rule 5 of the Section 2254 Rules, respondents are required to file only "a copy of the briefs submitted by the petitioner in state courts, briefs submitted by the State, opinions of the state courts and relevant portions of the transcripts." (D.E. 32 at 1.) As the response misapprehended Rule 5(c) and the February 27, 2007 order, Judge Breen issued an order on April 10, 2008 directing Respondent to file the complete state-court record, including the opening and closing statements at trial. (D.E. 36.) The matter was reassigned to this judge on May 21, 2008. (D.E. 39.) On May 22, 2008, Respondent filed a notice that he had filed the complete state-court record (D.E. 40), accompanied by a letter from the Clerk of the Circuit Court for Tipton County, Tennessee, and the transcript of the opening and closing statements. (D.E. 41.)

I.   <u>STATE COURT PROCEDURAL HISTORY</u>

On August 25, 1999, Williams was convicted following a jury trial in the Tipton County Circuit Court of second degree murder in connection with the shooting death of his brother-in-law, Larry Fayne. (D.E. 30-2 at 31; D.E. 30-3 at 154.) Following a sentencing hearing on September 17, 1999, Williams was sentenced to a term of imprisonment of fifteen (15) years, to be served at 100% as a violent offender. (D.E. 30-2 at 43; D.E. 30-3 at 157-75.) The Tennessee Court of Criminal Appeals affirmed his conviction. <u>State v. Williams</u>, No. W2001-01825-CCA-R3-CD, 2001 WL 1584175 (Tenn. Crim. App. Nov. 29, 2001) (D.E. 30-6), <u>perm. app. denied</u> (Tenn. Apr. 29, 2002).

In May, 2002, Williams filed a <u>pro</u> <u>se</u> petition pursuant to the then-current version of the Tennessee Post-Conviction Procedure Act, Tenn. Code Ann. §§ 40-30-201 to -222, in the Tipton County Circuit Court. (D.E. 30-8 at 4-28.) Counsel was appointed to represent Williams (<u>id.</u> at 29-30), an amended petition was filed (<u>id.</u> at 35-36), and the postconviction court conducted an evidentiary hearing on November 22, 2002 (D.E. 30-9). The postconviction court denied relief in an order issued on November 25, 2002 (D.E. 30-8 at 42-46), and the Tennessee Court of Criminal Appeals affirmed, <u>Williams v. State</u>, No. W2002-03140-CCA-R3-PC, 2003 WL 22922269 (Tenn. Crim. App. Dec. 9, 2003) (D.E. 30-12), <u>perm. app. denied</u> (Tenn. Mar. 1, 2004).

In order to assess the claims raised by Williams in this petition, it is necessary briefly to set forth the facts, as found by the Tennessee Court of Criminal Appeals:

> On February 6, 1999, the defendant and several other guests attended a party at the residence of the defendant's sister and her husband, Larry Fayne. Most guests were drinking alcoholic beverages. One guest, Dale Mason, joked with the defendant and the defendant became angry. Mason explained he was only joking, and he and the defendant shook hands. Shortly thereafter, the defendant left the residence.
>
> The defendant returned to the residence in approximately 15 minutes. He entered the kitchen where Larry Fayne and others were talking. The defendant was angry and accused Fayne of having him "set up." The defendant then knocked a drink out of Fayne's hand. Fayne's wife, Lisa, who was the defendant's sister, immediately pushed the defendant out the door telling him to calm down and leave the house. Larry Fayne, who was standing immediately behind his wife, told the defendant, "[t]his is my house too, you know." The defendant, with a pistol to his side, then fired a shot which struck Larry Fayne in the face. Fayne was still standing and backed up into the kitchen. Shortly thereafter, defendant raised his hand and fired another shot which struck Fayne in the chest. Fayne died as a result of these gunshot wounds.
>
> The defendant was then seen in the backyard of the residence walking in circles. However, when the police arrived, the defendant fled. He was later captured and arrested.

State v. Williams, 2001 WL 1584175, at *1.

## II.   PETITIONER'S FEDERAL HABEAS CLAIMS

In this petition, Williams raises the following issues:

1.   His conviction was obtained by a violation of the privilege against self-incrimination;

2.   His conviction was obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defense;

3. He was denied the effective assistance of counsel in violation of the Sixth Amendment; and

4. He was denied the right to an appeal.

## III. ANALYSIS OF THE MERITS

### A. Waiver and Procedural Default

Twenty-eight U.S.C. § 2254(b) states, in pertinent part:

(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

    (A) the applicant has exhausted the remedies available in the courts of the State; or

    (B) (i) there is an absence of available State corrective process; or

        (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

Thus, a habeas petitioner must first exhaust available state remedies before requesting relief under § 2254. E.g., Granberry v. Greer, 481 U.S. 129, 133-34 (1987); Rose v. Lundy, 455 U.S. 509, 519 (1982); Rule 4, Section 2254 Rules. A petitioner has failed to exhaust his available state remedies if he has the opportunity to raise his claim by any available state procedure. 28 U.S.C. § 2254(c); Preiser v. Rodriquez, 411 U.S. 475, 477, 489-90 (1973).

To exhaust his state remedies, the petitioner must have presented the very issue on which he seeks relief from the federal

courts to the courts of the state that he claims is wrongfully confining him. Picard v. Connor, 404 U.S. 270, 275-76 (1971); Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994). "[A] claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief." Gray v. Netherland, 518 U.S. 152, 162-63 (1996). "'[T]he substance of a federal habeas corpus claim must first be presented to the state courts.'" Id. at 163 (quoting Picard, 404 U.S. at 278). A habeas petitioner does not satisfy the exhaustion requirement of 28 U.S.C. § 2254(b) "by presenting the state courts only with the facts necessary to state a claim for relief." Id.

Conversely, "[i]t is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court." Id. When a petitioner raises different factual issues under the same legal theory, he is required to present each factual claim to the highest state court in order to exhaust his state remedies. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Pillette v. Foltz, 824 F.2d 494, 496 (6th Cir. 1987). He has not exhausted his state remedies if he has merely presented a particular legal theory to the courts without presenting each factual claim. Pillette, 824 F.2d at 497-98. The claims must be presented to the state courts as a matter of federal law. "It is not enough that all the facts necessary to support the federal claim were before the state

courts, or that a somewhat similar state-law claim was made."
Anderson v. Harless, 459 U.S. 4, 6 (1982); see also Duncan v.
Henry, 513 U.S. 364, 366 (1995) (per curiam) ("If a habeas
petitioner wishes to claim that an evidentiary ruling at a state
court trial denied him the due process of law guaranteed by the
Fourteenth Amendment, he must say so, not only in federal court,
but in state court.").

The state court decision must rest primarily on federal
law. Coleman v. Thompson, 501 U.S. 722, 734-35 (1991). If the state
court decides a claim on an independent and adequate state ground,
such as a procedural rule prohibiting the state court from reaching
the merits of the constitutional claim, the petitioner ordinarily
is barred by this procedural default from seeking federal habeas
review. Wainwright v. Sykes, 433 U.S. 72, 87-88 (1977). However,
a federal claim may be properly exhausted even if the state-court
decision does not explicitly address it; it is enough that the
petitioner's brief squarely presents the issue. Smith v. Digmon,
434 U.S. 332 (1978) (per curiam); see also Baldwin v. Reese, 541
U.S. 27, 30-32 (2004) (a federal habeas claim is fairly presented
to a state appellate court only if that claim appears in the
petitioner's brief).

When a petitioner's claims have never been actually
presented to the state courts but a state procedural rule prohibits
the state court from extending further consideration to them, the
claims are deemed exhausted, but procedurally barred. Coleman, 501

U.S. at 752-53; <u>Teague v. Lane</u>, 489 U.S. 288, 297-99 (1989); <u>Wainwright</u>, 433 U.S. at 87-88; <u>Rust</u>, 17 F.3d at 160.

A petitioner confronted with either variety of procedural default must show cause for the default and that he was prejudiced in order to obtain federal court review of his claim. <u>Teague</u>, 489 U.S. at 297-99; <u>Wainwright</u>, 433 U.S. at 87-88. Cause for a procedural default depends on some "objective factor external to the defense" that interfered with the petitioner's efforts comply with the procedural rule. <u>Coleman</u>, 501 U.S. at 752-53; <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986).

A petitioner may avoid the procedural bar, and the necessity of showing cause and prejudice, by demonstrating "that failure to consider the claims will result in a fundamental miscarriage of justice." <u>Coleman</u>, 501 U.S. at 750. The petitioner must show that "'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995) (quoting <u>Murray</u>, 477 U.S. at 496). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." <u>Id.</u>

The conduct of Williams' postconviction proceedings was governed by the then-current version of Tennessee's Post-Conviction Procedure Act, Tenn. Code Ann. §§ 40-30-201 to -222. That Act specified types of procedural default that might bar a state court from reviewing the merits of a post-conviction claim:

Upon receipt of a petition in proper form, or upon receipt of an amended petition, the court shall examine the allegations of fact in the petition. If the facts alleged, taken as true, fail to show that the petitioner is entitled to relief or fail to show that the claims for relief have not been waived or previously determined, the petition shall be dismissed. The order of dismissal shall set forth the court's conclusions of law.

Id. at § 40-30-206(f).[1]

A one-year statute of limitations governed the filing of petitions under the Act. Id. at § 40-30-202. The Sixth Circuit has upheld the dismissal of a Tennessee prisoner's habeas petition as barred by a procedural default caused by failing to file within the Tennessee statute of limitations on postconviction relief. Hannah v. Conley, 49 F.3d 1193, 1194-95 (6th Cir. 1995) (construing pre-1995 statute and stating "the language of Tenn. Code Ann. § 40-30-102 is mandatory"). In this case, the prisoner's right to file any further state postconviction petition is barred by the one-year

---

[1]    Tenn. Code Ann. § 40-30-206 continued:

(g)    A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented unless:

　　(1)    The claim for relief is based upon a constitutional right not recognized as existing at the time of trial if either the federal or state constitution requires retroactive application of that right; or

　　(2)    The failure to present the ground was the result of state action in violation of the federal or state constitution.

(h)    A ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing. A full and fair hearing has occurred where the petitioner is afforded the opportunity to call witnesses and otherwise present evidence, regardless of whether the petitioner actually introduced any evidence.

statute of limitations and, therefore, he does not have the option of returning to state court to exhaust any claim presented in this § 2254 petition.

     B.   <u>Legal Standard for Merits Review</u>

     The standard for reviewing a habeas petitioner's constitutional claims on the merits is stated in 28 U.S.C. § 2254(d). That section provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

This Court must determine whether the state court adjudications of the claims that were decided on the merits were either "contrary to" or an "unreasonable application of" "clearly established" federal law as determined by the United States Supreme Court. This Court must also determine whether the state court decision with respect to each issue was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding.

The Supreme Court has issued a series of decisions setting forth the standards for applying § 2254(d)(1).[2] In <u>(Terry) Williams v. Taylor</u>, 529 U.S. 362, 404 (2000), the Supreme Court emphasized that the "contrary to" and "unreasonable application of" clauses should be accorded independent meaning. A state-court decision may be found to violate the "contrary to" clause under two circumstances:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent. Accordingly, in either of these two scenarios, a federal court will be unconstrained by § 2254(d)(1) because the state-court decision falls within that provision's "contrary to" clause.

<u>Id.</u> at 405-06 (citations omitted); <u>see also</u> <u>Price v. Vincent</u>, 538 U.S. 634, 640 (2003); <u>Lockyer v. Andrade</u>, 538 U.S. 63, 73 (2003); <u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002).[3] The Supreme Court has emphasized the narrow scope of the "contrary to" clause, explaining that "a run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause."

---

[2]      By contrast, there is little case law addressing the standards for applying § 2254(d)(2).

[3]      The Supreme Court has emphasized that this standard "does not require citation of our cases—indeed, it does not even require <u>awareness</u> of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002) (per curiam) (emphasis in original).

<u>Williams</u>, 529 U.S. at 406; <u>see also</u> <u>id.</u> at 407 ("If a federal habeas court can, under the 'contrary to' clause, issue the writ whenever it concludes that the state court's application of clearly established federal law was incorrect, the 'unreasonable application' test becomes a nullity.").

A federal court may grant the writ under the "unreasonable application" clause "if the state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies it to the facts of the particular case." <u>Cone</u>, 535 U.S. at 694; <u>see also</u> <u>Andrade</u>, 538 U.S. at 75; <u>Williams</u>, 529 U.S. at 409.[4] "[A]n unreasonable application of federal law is different from an incorrect application of federal law." <u>Williams</u>, 529 U.S. at 410.[5] "[A] federal habeas court

_____

[4] Although the Supreme Court in <u>Williams</u> recognized, <u>in dicta</u>, the possibility that a state-court decision could be found to violate the "unreasonable application" clause when "the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," 529 U.S. at 407, the Supreme Court expressed a concern that "the classification does have some problems of precision," <u>id.</u> at 408. The <u>Williams</u> Court concluded that it was not necessary "to decide how such 'extension of legal principle' cases should be treated under § 2254(d)(1)," <u>id.</u> at 408-09, and, to date, the Supreme Court has not had occasion to revisit the issue. See <u>Williams v. Coyle</u>, 260 F.3d 684, 699-700 (6th Cir. 2001).

[5] <u>See also</u> <u>Andrade</u>, 538 U.S. at 75 (lower court erred by equating "objectively unreasonable" with "clear error"; "These two standards, however, are not the same. The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); <u>Woodford v. Visciotti</u>, 537 U.S. 19, 25 (2002) (per curiam) (holding that the lower court "did not observe this distinction [between an incorrect and an unreasonable application of federal law], but ultimately substituted its own judgment for that of the state court, in contravention of 28 U.S.C. § 2254(d)."); <u>Cone</u>, 535 U.S. at 698-99 ("For [a habeas petitioner] to succeed . . . , he must do more than show that he would have satisfied <u>Strickland</u>'s test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied <u>Strickland</u>
(continued...)

making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409.[6]

Section 2254(d)(1) refers to "clearly established" federal law, "as determined by the Supreme Court of the United States." This provision "expressly limits the source of law to cases decided by the United States Supreme Court." Harris v. Stovall, 212 F.3d 940, 944 (6th Cir. 2000). As the Sixth Circuit has explained:

> This provision marks a significant change from the previous language by referring only to law determined by the Supreme Court. A district court or court of appeals no longer can look to lower federal court decisions in deciding whether the state decision is contrary to, or an unreasonable application of, clearly established federal law.

Herbert v. Billy, 160 F.3d 1131, 1135 (6th Cir. 1999) (citing 17A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4261.1 (2d ed. Supp. 1998)); see also Harris, 212 F.3d at 944 ("It was error for the district court to rely on authority other than that of the Supreme Court of the United States in its analysis under § 2254(d)."). Finally, in determining whether a rule is

_____

[5]      (...continued)
incorrectly."); Williams, 529 U.S. at 411 ("Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.").

[6]      See also Brown v. Payton, 544 U.S. 133, 147 (2005) ("Even were we to assume the '"relevant state-court decision applied clearly established federal law erroneously or incorrectly,"' . . . there is no basis for further concluding that the application of our precedents was 'objectively unreasonable.'") (citations omitted).

"clearly established," a habeas court is entitled to rely on "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412.

There is almost no case law about the standards for applying § 2254(d)(2), which permits federal courts to grant writs of habeas corpus where the state court's adjudication of a petitioner's claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." In a decision applying this standard, the Supreme Court observed that § 2254(d)(2) must be read in conjunction with 28 U.S.C. § 2254(e)(1), which provides that a state court's factual determinations are presumed to be correct unless rebutted by clear and convincing evidence. Miller-El v. Dretke, 545 U.S. 231, 240 (2005).[7] It appears that the Supreme Court has, in effect, incorporated the standards applicable to the "unreasonable application" prong of § 2254(d)(1). Rice v. Collins, 546 U.S. 333, 341-42 (2006) ("Reasonable minds reviewing the record might disagree about the prosecutor's credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination."). That is consistent with the approach

---

[7] But cf. Rice v. Collins, 546 U.S. 333, 338-39 (2006) (recognizing that it is unsettled whether there are some factual disputes where § 2254(e)(1) is inapplicable).

taken by the Sixth Circuit, which stated, in an unpublished decision, that

> a federal habeas court may not grant habeas relief under § 2254(d)(2) simply because the court disagrees with a state trial court's factual determination. Such relief may only be granted if the state court's factual determination was "objectively unreasonable" in light of the evidence presented in the state court proceedings. Moreover . . . , the state court's factual determinations are entitled to a presumption of correctness, which is rebuttable only by clear and convincing evidence.

Young v. Hofbauer, 52 F. App'x 234, 236 (6th Cir. 2002) (citing 28 U.S.C. § 2254(e)(1));[8] see also Matthews v. Ishee, 486 F.3d 883, 889 (6th Cir. 2007); Stanley v. Lazaroff, 01-4340, 2003 WL 22290187, at *9 (6th Cir. Oct. 3, 2003); Jackson v. Holland, No. 01-5720, 2003 WL 22000285, at *7 (6th Cir. Aug. 21, 2003) ("Though the Supreme Court has not yet interpreted the 'unreasonable determination' clause of § 2254(d)(2), based upon the reasoning in Williams, it appears that a court may grant the writ if the state court's decision is based on an objectively unreasonable determination of the facts in light of the evidence presented during the state court proceeding.") (citing Torres v. Prunty, 223 F.3d 1103, 1107-08 (9th Cir. 2000)).

---

[8]    See also Sumner v. Mata, 449 U.S. 539, 546-47 (1981) (applying presumption of correctness to factual determinations of state appellate courts).

IV.  <u>ANALYSIS OF PETITIONER'S CLAIMS</u>

  A.  <u>The alleged violation of the privilege against self-incrimination (Claim 1)</u>

  Williams first asserts that his conviction was obtained in violation of the privilege against self-incrimination. The basis for this claim is as follows:

> 1) Defendant Freeland during trial stated "I know he don't want to testifing [sic]", then stated in detail my prior conviction of a similar nature, a objection was made, defendant Walker motion to strike, an told the jury to disregard the statement.
> 2) In closing defendant Freeland stated, "the state evidence went uncontradicted."
> 3) By these action defendant Freeland and Walker violated my right an[d] privilege aganist [sic] self-incrimination."

(D.E. 1 at 4.)[9]

  Respondent contends that this issue is barred by procedural default. (D.E. 29 at 9-10.) Williams did not raise this issue on direct appeal. (D.E. 30-4.) Williams mentioned the issue in his <u>pro</u> <u>se</u> postconviction petition (D.E. 30-8 at 8-9, 14-17, 21-22), where he asserted that appellate counsel was ineffective for failing to raise the issue on direct appeal (<u>id.</u> at 15-16) and trial counsel was ineffective for failing to ask for a mistrial (<u>id.</u> at 16-17). Williams also raised the issue in his testimony at the postconviction hearing. (D.E. 30-9 at 29, 32-34.) Because Williams did not include the issue in his brief to the Tennessee

---

  [9]    The individual referred to as "defendant Freeland" is Assistant District Attorney General James W. Freeland, Jr., and "defendant Walker" is Tipton County Circuit Court Judge Joseph H. Walker.

Court of Criminal Appeals on the dismissal of his postconviction petition (D.E. 30-10), he has not properly exhausted the claim in state court. See supra pp. 7-8.

Although Williams raised the issue in his pro se application seeking permission to appeal the denial of his postconviction petition (D.E. 30-13 at 3), that does not constitute a fair presentation of the issue to the state courts. Castille v. Peoples, 489 U.S. 346, 350 (1989) (a claim has not been fairly presented to the state courts where it "has been presented for the first and only time in a procedural context in which its merits will not [ordinarily] be considered"). The circumstances under which the Tennessee Supreme Court will exercise its discretion to grant permission to appeal are set forth in Tenn. R. App. P. 11(a), which provides as follows:

> An appeal by permission may be taken from a final decision of the Court of Appeals or Court of Criminal Appeals to the Supreme Court only on application and in the discretion of the Supreme Court. In determining whether to grant permission to appeal, the following, while neither controlling nor fully measuring the court's discretion, indicate the character of reasons that will be considered: (1) the need to secure uniformity of decision, (2) the need to secure settlement of important questions of law, (3) the need to secure settlement of questions of public interest, and (4) the need for the exercise of the Supreme Court's supervisory authority.

This issue, which goes only to the conduct of Williams' trial, does not satisfy any of the criteria in Rule 11(a), particularly where, as here, the issue was not presented to the Tennessee Court of Criminal Appeals. Thus, the fact that Williams raised this issue

in his application for permission to appeal the denial of his postconviction petition to the Tennessee Supreme Court does not alter the conclusion that he failed to exhaust the claim in state court. Therefore, this claim is barred by procedural default. Because Williams does not, and cannot, contend that he is actually innocent, he cannot overcome this procedural bar.

Although the Court ordinarily does not address the merits of procedurally defaulted claims, an exception will be made in this case because of Petitioner's repeated mischaracterizations of the record and because this issue forms the basis for the ineffective assistance claim. After the State rested, Williams was examined outside the presence of the jury about his decision not to testify. During that examination, defense counsel advised Williams that his prior conviction would not be admissible for impeachment purposes if he were to testify. (D.E. 30-3 at 196-97.) During that jury-out hearing, the prosecutor made the following statement:

> Your Honor, one thing I would like for the record to reflect. Mr. Stockton alluded to it, but we have filed a notice that although Mr. Williams would be a standard offender if convicted, he has a 1987 aggravated assault conviction from the Shelby court, Docket 86-04708, and because the original charge in that case of assault to commit murder and the conviction offense of aggravated assault were so similar to this situation, that the State did not intend to use that for impeachment purposes against Mr. Williams. So we want to make sure that's not part of his decision not to testify.

(Id. at 125-26.) Thus, the State made no statement in the presence of the jury about Williams' prior conviction. Moreover, contrary to Williams' representations, the State did not mention Williams'

prior conviction during opening or closing argument. (D.E. 41-3.)
The prosecutor also did not, as Williams claims, comment on his
decision not to testify during closing argument.

The first issue is without merit and is DISMISSED.

B. <u>The alleged failure of the prosecution to disclose
evidence favorable to the defense (Claim 2)</u>

In his second claim for relief, Williams asserts that his
conviction was obtained by the unconstitutional failure of the
prosecutor to disclose to the defendant evidence favorable to the
defense. Specifically, he states as follows:

> 1) Defendant Freeland fail to disclose evidence of the
> victim arrest record for violence, an[d] fail to disclose
> the victim clothing an[d] evidence of medical
> intervention.
> 2) Dr. Deering testified that evidence of the victim
> clothing and/or medical intervention would have alter his
> testimony, at trial.
> 3) By these action defendant Freeland fail to disclose
> evidence favorable to me, which violated my right of
> disclosure.

(D.E. 1 at 4.)

As a preliminary matter, William's presentation of this
claim does not comply with the habeas rules. Rule 2(c) of the
Section 2254 Rules provides, in pertinent part, that the petition
"shall specify all the grounds for relief which are available to
the petitioner and of which he has or by the exercise of reasonable
diligence should have knowledge <u>and shall set forth in summary form
the facts supporting each of the grounds thus specified</u>" (emphasis

added).[10] Notice pleading is not permitted in habeas petitions. Blackledge v. Allison, 431 U.S. 63, 75-76 (1977); Short v. United States, 504 F.2d 63, 65 (6th Cir. 1974).

This claim is not alleged with sufficient specificity to permit an evaluation of its merits. Williams does not explain the significance of the victim's prior arrest record, and he does not describe the contents of that record. Williams also does not explain the significance of the victim's clothing and or describe the "evidence of medical intervention" to which he refers.

Respondent contends this claim is barred by procedural default due to Williams' failure to exhaust it in state court. (D.E. 29.) Williams did not raise this issue on direct appeal. (D.E. 30-4.) He raised the issue in one sentence of the legal memorandum in support of his pro se postconviction petition (D.E. 30-8 at 23) ("If the material evidence had been provided and examined, namely the victims [sic] clothing, evidence of medical intervention, deceased reputation for violence, as well as state witness, Alfonzo Richardson's reputation for violence, the outcome may have been different.")), and he raised the issue, briefly, at the postconviction hearing (D.E. 30-9 at 18). The postconviction court treated the issue raised as whether trial counsel was ineffective for failing to file a motion to suppress the testimony of the expert who testified about the cause of death and, as so

---

[10]    The quotation is from the version of Rule 2(c) in effect when the petition was filed.

21

construed, rejected it. (D.E. 30-8 at 44.) The issue was not raised in the brief to the Tennessee Court of Criminal Appeals on appeal of the dismissal of the postconviction petition (D.E. 30-10) and, therefore, Williams has failed properly to exhaust it. Because there are no longer any means by which Williams can exhaust this claim in state court, it is barred by procedural default.

The issue also makes little sense when read in conjunction with the testimony of Dr. Thomas Deering, the assistant medical examiner who performed the autopsy on the victim. The testimony that forms the basis of this issue, concerning the distance from which the shot to the victim's chest was fired, was as follows:

> Q.   And were you able to draw a conclusion as to the distance that the weapon would have been to have produced gunshot wound D to the center of the chest?
>
> A.   I found no soot or stipple around gunshot wound D. Now, in and of itself, that indicates to me, if it's a pistol it's greater than two feet away. I say that with a couple of provisions of things that can alter it.
>
> Clothing can absorb the soot and the stipple. And the body came to me naked. It was unclothed. So I haven't had any opportunity to look at clothing.
>
> The second thing is, if it was wiped off, if there was medical intervention and someone cleaned up the site, that might take away the soot and the stipple that I might have seen. I am not aware if that occurred or not.
>
> I do know that, apparently, EMT's or paramedics arrived, at least enough to put an endotrachial tube into this individual and put some EKG pads on. But assuming that none of that happened, that he wasn't wearing a shirt, I would call this greater than two feet away.

(D.E. 30 at 21; see also id. at 22-23.) Nothing in Dr. Deering's testimony support's Williams' assertion that the State withheld material, exculpatory evidence, or that it withheld anything at all. The testimony at issue qualifies the witness's opinion that the shot to the chest was fired from more than two feet away.[11] Finally, even if Dr. Deering's opinion that the shot through the chest was fired from a distance is in error, Williams does not explain how he was prejudiced, as there is no dispute that he shot the victim twice, causing his death.[12]

The second issue is without merit and is DISMISSED.

C.    Ineffective assistance of counsel (Claim 3)

In his third issue, Williams asserts that he received ineffective assistance of counsel, in violation of the Sixth Amendment.  In particular:

> 1) Defendant Stockton fail to ask for a mistrial after the improper comment on me not testifying, an[d] fail to

---

[11]    To put this testimony in perspective, Dr. Deering testified that the victim, who was struck by two bullets, died of "multiple gunshot wounds, with injury to several vital organs and extensive bleeding." (id. at 10.) Dr. Deering did not testify to the order in which the shots were fired. He testified that "its possible" the victim could have survived the bullet that entered through his chin "[w]ith prompt medical care" (id. at 13), but that the shot to the victim's chest would have been fatal even if it "took place in the emergency room" (id. at 14; see also id. at 13). Dr. Deering also testified that, based on the absence of soot and the pattern of stipple around the wound, the shot to the chin was fired with the barrel "somewhat greater than four to six inches, and less than 24 inches" from the victim. (Id. at 20.)

[12]    Williams also has presented no information about the victim's alleged "arrest record for violence" and, even if he had, it is not clear that that evidence would have been admissible at trial. There is no suggestion in the record that the killing was done in self defense. Instead, the record establishes that Williams became angry at a third person, left the gathering, got a weapon, returned to the gathering, and shot the victim.

> object to the jury instruction on 2th [sic] degree murder
> at trial.
> 2) Defendant Robbins an[d] Witherington refused to raise
> an[d] assert all issues in my pro se motion an[d]
> petition for an adequate appeal[.]
> 3) By these actions I was denied effective assistance by
> all counsel.

(D.E. 1 at 5.)[13]

Respondent contends this issue is procedurally defaulted because Williams did not properly exhaust it in state court. (D.E. 29 at 10-11.) Although he did raise an ineffective assistance of counsel claim in his postconviction petition, the only issue that was presented on appeal to the Tennessee Court of Criminal Appeals was

> the issue of counsel's ineffectiveness in failing to
> prepare and devise a strategy for trial. Essentially, the
> petitioner posits that trial counsel was so relieved that
> the charge had been reduced from first degree to second
> degree murder that he basically abdicated his duty to
> defend the petitioner against the lesser charge.

Williams v. State, 2003 WL 22922269, at *2; see also D.E. 30-10 (Petitioner's brief to Tennessee Court of Criminal Appeals on denial of postconviction petition). Williams did not exhaust his claim that trial counsel rendered ineffective assistance by failing to ask for a mistrial. See supra pp. 17-19.

As for the jury instructions, Williams alleged in the memorandum in support of his pro se postconviction petition that

---

[13] "Defendant Stockton" refers to David S. Stockton, who represented the prisoner at trial, "[d]efendant Robbins" is C. Michael Robbins, who represented the prisoner on direct appeal, and "Witherington" is J. Barney Witherington, IV, who represented the prisoner in connection with the state postconviction proceeding.

the jury should have been instructed on the effect of his voluntary intoxication on his ability to form the requisite intent. (D.E. 30-8 at 25.) The postconviction court rejected the claim on the merits and also held that it was waived due to the failure to raise it on direct appeal. (Id. at 43.) The issue was not included in Williams' brief to the Tennessee Court of Criminal Appeals and, therefore, it was abandoned. (D.E. 30-10.)

Williams also did not exhaust his claim that counsel on direct appeal failed to raise all the issues he wanted included in the brief. See Edwards v. Carpenter, 529 U.S. 446 (2000).[14] Because Williams is not actually innocent of second degree murder, he cannot overcome his procedural default.

Finally, for the reasons previously stated, see supra pp. 19-20, the issue is without merit. The State made no statement in the presence of the jury about Williams' prior conviction and did not comment on Williams' decision not to testify during closing argument.

The third issue is without merit and is DISMISSED.

D.    The asserted denial of the right to an appeal (Claim 4)

In his final claim, Williams contends that he was denied the right to an appeal. In particular:

_____

[14]    Because there is no right to counsel in connection with a postconviction petition, Coleman v. Thompson, 501 U.S. at 752-54, Williams is not entitled to habeas relief in connection with any errors or omissions of postconviction counsel. See 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.").

> 1) Defendant Stockton was ask[ed] at sentencing, by the court, to stay on my case for appeal purpose[s.]
> 2) Only after I filed a pro se petition for a transcript, over a year later did the court order defendant Stockton to file motion for new trial.
> 3) Defendant Robbins an[d] Witherington refuse to raise all issues for appeal.
> 4) By these actions by defendant Stockton, Robbins an[d] Witherington was I denied my right to a adequate appeal.

(D.E. 1 at 5.)

Respondent contends, correctly, that this issue is barred by procedural default. (D.E. 29 at 11.) This issue is, essentially, a repetition of the claim that Williams was denied the effective assistance of counsel on direct appeal that was addressed in Claim 3. As previously stated, see supra pp. 24-25, Williams has not exhausted any aspect of this claim in state court, and he is not entitled to federal habeas relief because of the purportedly deficient performance of postconviction counsel. This issue is without merit.

The petition is DISMISSED. The Clerk is directed to enter judgment for Respondent.

V.    APPEAL ISSUES

The Court must also determine whether to issue a certificate of appealability ("COA"). The statute provides:

> (1)   Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
>        (A)   the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

> (B) the final order in a proceeding under section 2255.

> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c); see also Fed. R. App. P. 22(b); Lyons v. Ohio Adult Parole Auth., 105 F.3d 1063, 1073 (6th Cir. 1997) (district judges may issue certificates of appealability). No § 2254 petitioner may appeal without this certificate.

In Slack v. McDaniel, 529 U.S. 473, 483-84 (2000), the Supreme Court stated that § 2253 is a codification of the standard announced in Barefoot v. Estelle, 463 U.S. 880, 893 (1983), which requires a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "'adequate to deserve encouragement to proceed further.'" Slack, 529 U.S. at 484 (quoting Barefoot, 463 U.S. at 893 & n.4).

The Supreme Court has cautioned against undue limitations on the issuance of certificates of appealability:

> [O]ur opinion in Slack held that a COA does not require a showing that the appeal will succeed. Accordingly, a court of appeals should not decline the application of a COA merely because it believes the applicant will not demonstrate an entitlement to relief. The holding in Slack would mean very little if appellate review were denied because the prisoner did not convince a judge, or, for that matter, three judges, that he or she would prevail. It is consistent with § 2253 that a COA will

> issue in some instances where there is no certainty of
> ultimate relief. After all, when a COA is sought, the
> whole premise is that the prisoner "'has already failed
> in that endeavor.'"

<u>Miller-El v. Cockrell</u>, 537 U.S. 322, 337 (2003) (quoting <u>Barefoot</u>,

463 U.S. at 893). Thus,

> A prisoner seeking a COA must prove "'something more
> than the absence of frivolity'" or the existence of mere
> "good faith" on his or her part. . . . We do not require
> petitioners to prove, before the issuance of a COA, that
> some jurists would grant the petition for habeas corpus.
> Indeed, a claim can be debatable even though every jurist
> of reason might agree, after the COA has been granted and
> the case has received full consideration, that petitioner
> will not prevail.

<u>Id.</u> at 338 (quoting <u>Barefoot</u>, 463 U.S. at 893); <u>see also</u> <u>id.</u> at 342

(cautioning courts against conflating their analysis of the merits

with the decision about whether to issue a COA; "The question is

the debatability of the underlying constitutional claim, not the

resolution of that debate.").[15]

In this case, there can be no question that any appeal

by Petitioner on any of the issues raised in this petition does not

deserve attention because none of the claims raised in the petition

has been exhausted in state court. The Court therefore DENIES a

certificate of appealability.

The Sixth Circuit has held that the Prison Litigation

Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to

---

[15]     The Supreme Court also emphasized that "[o]ur holding should not be
misconstrued as directing that a COA always must issue." <u>Id.</u> at 337. Instead,
the COA requirement implements a system of "differential treatment of those
appeals deserving of attention from those that plainly do not." <u>Id.</u>

appeals of orders denying § 2254 petitions. <u>Kincade v. Sparkman</u>, 117 F.3d 949, 951 (6th Cir. 1997). To appeal <u>in</u> <u>forma</u> <u>pauperis</u> in a habeas case, and thereby avoid the $455 appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). <u>Kincade</u>, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal <u>in</u> <u>forma</u> <u>pauperis</u>, the prisoner must file his motion to proceed <u>in</u> <u>forma</u> <u>pauperis</u> in the appellate court. <u>See</u> Fed. R. App. P. 24(a)(4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter would not be taken in good faith, and leave to appeal <u>in</u> <u>forma</u> <u>pauperis</u> is DENIED. If Petitioner files a notice of appeal, he must also pay the full $455 appellate filing fee or file a motion to proceed <u>in</u> <u>forma</u> <u>pauperis</u> and supporting affidavit in the Sixth

Circuit Court of Appeals within thirty (30) days of the date of entry of this order.

IT IS SO ORDERED this 12th day of August, 2008.


**s/S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE